IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HOWARD SALAMON d/b/a SALAMON BROTHERS,<br><br>    Plaintiff,<br><br>vs.<br><br>CIRTRAN CORP.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:03-CV-787 TS |

A hearing was held in this matter on October 24, 2005. At that hearing, the Court heard argument on the parties' cross-motions for summary judgment. At the conclusion of the hearing, the Court asked the parties to submit supplemental briefing on the issue of CirTran's admission that Salamon had some amount of compensation due to him under the second agreement between CirTran and Salamon. The Court now, being fully advised on these issues, is prepared to rule on the parties' cross-motions for summary judgment.

## I.  FACTUAL BACKGROUND

In 2001, Salamon contacted CirTran and proposed that he assist CirTran in identifying potential investors in CirTran.  They entered into a consulting agreement which contemplated that Salamon would help CirTran locate $5 million in financing.  The agreement set out a number of activities which Salamon was to perform and had a termination date of December 31, 2003.

In September 2002, Salamon introduced CirTran to Cornell.  Salamon had an arrangement with Cornell where Cornell would pay him a fee for making introductions to potential companies in which to invest.

On October 2, 2002, Salamon and CirTran signed a new agreement ("the second agreement").  Salamon drafted the second agreement and it stated that CirTran "will compensate consultant [Salamon] a finder's fee of Ten [sic] Percent (7%) of the total commitment amount that the consultant provides CIRT [CirTran], through the funding source."  The agreement also provided that the "consultant fees are to be paid by CIRT in the form of CirTran Corporation Restricted Common Stock at the amount equal to 7% of the committed funds that the agent provides CIRT through funding sources."  This second agreement made the previous agreement null and void.

Cornell then proposed to CirTran an "equity line of credit agreement" to invest $5 million in CirTran.  CirTran informed Cornell that it was interested in the deal, but that it could not afford both the 7% fee owed to Salamon and the 7% fee owed to Cornell

under the proposed arrangement.[1]  Cornell offered to lower their rate to 4% and CirTran sought to have Salamon do the same.  CirTran altered the second agreement to a 4% fee and faxed the modified agreement to Salamon.  Salamon never signed or returned this agreement.  Salamon stated, in his deposition, that he never specifically stated that he would be unwilling to change his fee, but that he never agreed to change it.  Iehab Hawatmeh, the president of CirTran, asserts in his Affidavit that Salamon did agree to change his fee to 4%.

On November 5, 2002, CirTran entered into the agreement with Cornell.  Under this agreement, CirTran was entitled to draw down up to $5 million and to "put," or unilaterally issue, a large number of shares to Cornell.

Salamon then demanded his 7% rate.  On November 25, 2002, Salamon, through counsel, stated that he would accept a 4% fee if it was delivered by November 29, 2002.  If not, he would insist on his 7% fee.  CirTran did not pay either amount.

After this dispute arose concerning Salamon's fee, Salamon and CirTran no longer worked together and their only communications were about the payment dispute.  In May 2004, after this suit had already been brought, CirTran approached Cornell directly to seek more funding.  CirTran and Cornell entered into a new agreement whereby CirTran was entitled to draw down up to $20 million and to "put," or unilaterally issue, a number of shares to Cornell.  After learning of this agreement during discovery,

---

[1] Salamon takes issue with this, arguing that he was to be paid in stock, which would not result in a reduction of CirTran's cash assets.

Salamon filed a supplemental complaint seeking an additional 7% fee under this later transaction.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

## III. DISCUSSION

The parties have raised a number of issues in their respective motions for summary judgment.[5]  The Court finds three issues are crucial to the determination of this case.  These are: (1) whether Salamon has acted as a broker/dealer, which would require registration under state and federal securities laws, or whether he acted as a finder, which would not require such registration and would potentially allow him to recover a fee; (2) whether Salamon, if entitled to a fee at all, is entitled to a 7% fee or a

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);  *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[5] The Court ruled on three of these issues—the statute of limitations, acceptance by silence, and the statute of frauds—at the October 24, 2005 hearing.  The Court granted summary judgment to Salamon on the statute of limitations defense raised by CirTran based on a stipulation by the parties.  The Court ruled that CirTran is not entitled to summary judgment on the issue of acceptance by silence for the reasons set out by the Court at that hearing.  Finally, the Court also ruled that Utah law applied to Salamon's statute of frauds argument for the reasons set out at the hearing.

4% fee; and (3) whether Salamon is entitled to a fee for the second transaction between CirTran and Cornell. The Court finds that there are genuine issues of material fact present in all of these issues which precludes the Court from granting summary judgment to either party on these issues.

A.  WHETHER SALAMON IS A BROKER/DEALER OR A FINDER

Under Federal law, a broker is "any person engaged in the business of effecting transactions in securities for the account of others."[6]  A dealer is a "person engaged in the business of buying and selling securities for his own account, through a broker or otherwise."[7]  The Exchange Act makes it unlawful for any broker or dealer to use "the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered" with the Securities and Exchange Commission.[8]

Salamon characterizes himself as a "finder" as opposed to a "broker" or "dealer." Salamon argues that he is not "engaged in the business of effecting transactions in securities." CirTran argues that Salamon is acting as an unlicensed broker-dealer in violation of state and federal securities laws.

The federal securities laws do not specifically discuss a finder's exception and the phrase "engaging in the business of effecting transactions in securities" is not

---

[6] 15 U.S.C. § 78c(a)(4).

[7] *Id*. § 78c(a)(5).

[8] *Id*. § 78o(a)(1).

defined in statute. A finder's exception has been recognized in case law,[9] and in administrative decisions, particularly the SEC in its No-Action Letters. These letters identify a number of relevant factors to determine whether someone is acting as a broker. These include: (1) whether the person receives transaction-based compensation, such as commissions or referral fees; (2) whether the person is involved in negotiations between the issuer and the investor; (3) whether the person makes valuations as to the merits of the investment or gives advice; and (4) whether the person is an active rather than passive finder of investors.[10]

      Utah law has provisions which are similar to the federal securities laws. Under Utah law, a broker-dealer "means any person engaged in the business of effecting transactions in securities for the account of others or for the person's own account."[11] "It is unlawful for any person to transact business in this state as a broker-dealer or agent unless the person is licensed under this chapter."[12] A later section provides that: "No person who has made or engaged in the performance of any contract in violation of this chapter or any rule or order hereunder, or has acquired any purported right under such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract."[13]

---

[9] The Fifth Circuit has addressed this issue in dealing with a Texas statute. *See Vero Group v. ISS-Int'l Servs. Sys.*, 971 F.2d 1178 (5th Cir. 1992).

[10] *BondGlobe, Inc.*, 2001 SEC No-Action Letter, 2001 WL 103418, *1 (October 4, 2000). *See also SEC v. Zubkis*, 2000 WL 218393, *9 (S.D.N.Y. 2000) (unpublished opinion).

[11] Utah Code Ann. § 61-1-13(1)(c)(i).

[12] *Id*. § 61-1-3(1).

[13] *Id*. § 61-1-22(8).

Salamon argues that Utah law does not apply to him.  Under Utah law, the definition of a broker-dealer does not include "a person who has no place of business in this state if . . . during any period of 12 consecutive months the person does not direct more than 15 offers to sell or buy into this state in any manner . . . ."[14]  Salamon argues that since he does not have a place of business in Utah and has not made more than 15 offers, the statute is inapplicable here.  CirTran argues, however, that this exception is limited to those people who only make offers.  Once an offer is accepted and acted upon, they argue, this exception does not apply.

There is no relevant case law discussing this provision.  The Court, however, agrees with CirTran's reading of the statute.  The Court believes that this exception applies only to those who make offers, not those who make sales of securities.  Other courts have recognized such a distinction.[15]  Therefore, the Utah securities laws may apply to Salamon if it can be shown that he has "engaged in the business of effecting transaction in securities."[16]

CirTran argues that there is no finders exception recognized in Utah.  CirTran cites a number of Utah cases that have rejected a finders exception in other areas (such as a real estate broker licensing statute).[17]  CirTran fails to cite any cases where a Utah Court has specifically addressed the issue of a finder's exception with regard to

---

[14] *Id.* § 61-1-13(1)(c)(ii)(D)(II).

[15] *See Bracy v. Winchester Metals Corp.*, 898 F.Supp. 515, 516–18 (W.D. Mich. 1995).

[16] Utah Code Ann. § 61-1-13(1)(c)(i).

[17] *Diversified Gen. Corp. v. White Barn Golf Course*, 584 P.2d 848, 851–52 (Utah 1978).

7

the state's securities laws.  The cases cited by CirTran can be distinguished since they deal with other types of statutes.

The Court disagrees with CirTran and finds that there is a finders exception to the Utah securities laws.  This finding based on the fact that other states with similar securities laws have found a finders exception and that Utah's securities laws are closely related to the federal laws.  Therefore, Salamon proceed with his argument that he was a finder, not a broker/dealer.

The Court believes that there is a material issue of fact as to whether Salamon is acting as a finder or a broker-dealer under the state and federal securities law.  The Court will leave to a fact finder the issue of whether Salamon was a broker/dealer or a finder under the factors set out by the SEC in its No-Action Letters.

B.  WHETHER SALAMON IS ENTITLED TO A 4% FEE OR A 7% FEE

If Salamon is acting as a finder and is entitled to a fee, the second question becomes whether Salamon is entitled to a 4% fee or a 7% fee.  CirTran has admitted that Salamon is entitled to at least 4% under the second agreement.  CirTran has asked the Court to allow it to amend this admission in order to assert that Salamon acted illegally.  The Court has allowed CirTran to amend its answer to assert this defense.  Salamon opposes allowing CirTran to amend its admission for various reasons.  The Court believes that an amendment is unnecessary.  As CirTran points out, the Court cannot enforce an illegal contract.[18]  Therefore, if Salamon is determined to have acted as a broker/dealer without being licensed, the Court could not, even with CirTran's

---

[18]*See Peterson v. The Sunrider Corp.*, 48 P.3d 918, 931 (Utah 2002).

8

admission, award Salamon a fee because the Court could not enforce an illegal contract. For these reasons, amendment of this admission is unnecessary.

Therefore, if Salamon is found to be a finder, CirTran has admitted that he is due some fee under the contract. The Court believes that there are genuine issues of material fact which preclude it from deciding whether the fee would be 4% or 7%. As noted above, the original contract called for 7%. CirTran sought to have the agreement changed to 4%. Salamon has stated that he neither agreed nor refused to change his fee to 4%, but he never signed or returned CirTran's modified agreement. Iehab Hawatmeh, the president of CirTran, has asserted, in his Affidavit, that Salamon did agree to change his fee to 4%. These issues preclude the Court from granting either party summary judgment on this issue.

## C. WHETHER SALAMON IS ENTITLED TO A FEE FOR THE SECOND TRANSACTION BETWEEN CIRTRAN AND CORNELL

The final issue is whether Salamon is entitled to a fee for the second transaction between CirTran and Cornell. As noted above, in May 2004, CirTran approached Cornell directly to seek more funding. CirTran and Cornell entered into a new agreement whereby CirTran was entitle to draw down up to $20 million and to "put," or unilaterally issue, a number of shares to Cornell. Salamon was not involved in this transaction other than having introduced CirTran and Cornell previously. After learning of this agreement, Salamon filed a supplemental complaint seeking an additional 7% fee under this later transaction.

CirTran argues that Salamon is not entitled to compensation for the second transaction because he was not the "procuring cause" of it. Salamon has taken the

position, however, that he is entitled to a commission on any transaction between CirTran and Cornell, regardless of his involvement or the amount of time between when he introduced them and when the transaction took place.

As a general rule, a broker or a finder must be the procuring cause of a transaction in order to receive compensation for that transaction.[19] "'Procuring cause' has been defined as the cause originating a series of events that, without break in their continuity, result in the accomplishment of the prime object of the employment."[20]

The Court finds that the language of the contract between Salamon and CirTran is ambiguous. There also remains the question of whether the prime object of the relationship between Cornell and CirTran was the $5 million deal or the $20 million deal. Therefore, the Court will not grant either party summary judgment on this issue.

## IV.  CONCLUSION

It is therefore

ORDERED that CirTran's Motion for Summary Judgment (Docket No. 44) is DENIED. It is further

ORDERED that Salamon's Motion for Summary Judgment (Docket No. 54) is DENIED. It is further

ORDERED that CirTran's request to amend it response (Docket No. 78) and CirTran's Motion for Leave to Amend Admission (Docket No. 82) are DENIED.

---

[19] 24 A.L.R.3d 1160, § 10.  *See also C.J. Realty, Inc. v. Willey*, 758 P.2d 923, 925 n.1 (Utah Ct. App. 1988) (stating "a real estate listing agreement requires that a real estate broker be the 'procuring cause' in bringing about a sale of real property.").

[20] *Pass v. Industrial Asphalt of California*, 239 Cal.App.2d 776, 782–83 (Cal. Ct. App. 1966).

DATED   November 22, 2005.

                                            BY THE COURT:

_____
TED STEWART
United States District Judge

11